Good morning, all. The first case this morning is 12-1462, U.S. v. Great American Insurance. Ms. Davidson. Good morning, and may it please the Court. Since the founding of the nation, Congress has required importers to post security before their imported merchandise may be released to ensure that the public fist is protected against the possibility that duties would not be paid. Also, since the founding of the nation, Congress has provided a special charge to be imposed against sureties if the government is forced to sue to collect on the bond. Can I ask you just a real-world historical practice? Do I understand right that this is, in fact, the first time you've ever asserted 580 in a countervailing duty or anti-dumping case? Yes, I believe, well, it's not the first time we have asserted it. There are several dozen collection cases pending at the Port of International Trade in which we are seeking Section 580 interest. But none have gone, I mean, this is a new assertion. Yes, this is, well, no court has ever decided this issue. Usually collection actions are settled. In fact, we send a demand letter and usually the surety asks where we want the check sent. So these cases are usually settled. In recent years, sureties have started contesting our demand letters and so there is a lot of litigation now pending at the Court of International Trade. Has there been over time, in the decades since anti-dumping and countervailing duty law was enacted, has there been a regular stream of litigations against sureties to collect on bonds? Not a regular stream in the sense that we have now. I would say now we have a flood. There have been periodic cases against sureties and several have come up to this court. It certainly has affirmed the use of Section 580 interest against duties, but that was not in the case involving anti-dumping duties. Is there an explanation why the government has not, until the recent flood of still pending cases, invoked 580? Well, it hasn't really been necessary because, as I said, these cases usually settle. Right, but that's why I asked you if some don't settle. Right, in the anti-dumping context. And some domestic industries would say the reason it hasn't happened before is because the government has not been vigilant enough. But certainly this court has approved Section 580 to apply to sureties when they do not pay on a bond. So the sureties attempt, in this case, to describe it as a relic of history is inconsistent with the law in this circuit. Similarly, this court has approved equitable interest in a wide variety of circumstances involving sureties. And so the only question is whether Section 580 and equitable interest can be awarded together in this circumstance. And we believe that it can be because the two types of charges serve different purposes. Section 580 provides an incentive to sureties not to do what the sureties did in this case, to hang back and wait for a decade, keeping the money, rather than paying it and then following the protest procedure, in which case the government would have the money. But they chose the route of keeping the money and litigating this case for a very long time, both administratively and at the trial court and now here. But isn't that the fundamental purpose of charging interest? The interest compensates for the time value of money. You didn't have the use of the money that you presumably were owed. That's the whole point of interest. The equitable interest compensates the government for the time value of money, but the Section 580 interest provides an incentive to sureties not to delay paying. Why doesn't it also provide compensation for the time value of money? In the same way that the Internal Revenue Code imposes both a charge that is in the form of interest plus interest if you underwithhold on your taxes. And it's also under the Debt Collection Act. There is interest and then there is a special penalty if you refuse to pay on a debt to the United States and the United States is forced to sue. So this is not a strange or alien proposal. It's squarely in the Internal Revenue Code. But this isn't the Internal Revenue Code? No, but certainly customs duties were the original source of revenue for the United States. They were the only source until 1916. It's a pity that's not still the case. Well, I would like to talk about the consequences if the plaintiffs were to prevail in this case. Can I take you back to what's I guess in fact a threshold question and in fact the basis on which the CIT decided this, which is that you did not develop this argument in a timely fashion, that there was an invocation in the complaint. Maybe there was some passing reference. I forget whether in your summary judgment papers. No heading, no developed argument for what I think you've confirmed is a quite new invocation of Section 580. How could it be an abuse of discretion for the CIT to have said that you simply forfeited the argument by not developing it until your Rule 59 motion? I think that's one of the easier issues for the court. I may agree with that, but maybe not in a way that's satisfactory to you. We expressly reserved and made a claim for interest in our complaint, and in fact Great American asserted… I'm sorry. If you make a claim in the complaint, you don't get to not try it or brief it in summary judgment. They see it in the complaint isn't developing it. I'm sorry, I wasn't finished responding. We did assert in our motion for summary judgment, we asked for the relief. We referred to the complaint and asked for the same relief we asked for in our complaint. We also expressly included interest in our proposed order that accompanied our brief on summary judgment. We filed supplemental authority in support of our pending motion for summary judgment. The point that he's raising is that traditional interest was one thing, but you are now raising a whole new kind of interest argument. The trial court thought that you hadn't really made that clear, so it was waived. We did expressly cite it. This court had said that sureties are liable for 580 interest, and Great American reserved the right to brief that issue if and when liability was established. Also, Great American, in its answer, although it did not assert impairment of suretyship as a defense in its answer, it did assert as a defense in its answer that it wasn't liable for interest, and it cited 580. So Great American knew that this was an issue. It reserved the right, just as the government did, to address the issue later, and that is the practice in most courts. Ordinarily, I would think that it would be a sensible thing for a defendant to say in response to the cautious move, if the government eventually comes back and actually makes a developed argument for something, we reserve the right to address it. That's not a concession that the government has, that the opposite side has actually done that. They didn't say the government has waived, the government is too late, this should be briefed now. Now they're playing a game of gotcha. They reserved the right to address it later, just as the government did, and now they're saying that it's too late. But there are cases, as we cited in our brief, where... Wait, did the government say initially, we reserve the right to argue it later? We asked for the interest. No, we did not say we reserve the right to argue it later. We asked for it in our motion, and it was in the proposed order. And in the government's view, it was making a sufficient argument at the initial stages? Yes, because it was in our complaint, it was in the answer. We provided a decision to the court that was issued while the summary judgment proceeding was going on, U.S. v. Canucks, in which the court awarded Section 580 interest, and we wanted the court to be aware of it. So it was clear that that was an issue in the case. It could have been addressed earlier, but usually in trial courts, especially in the Court of International Trade, issues of interest are decided later. Princess Cruz's case, decided by this court, is one where interest was addressed way after liability. You're now talking about pre-judgment interest. Since I gather post-judgment interest, the other side has pretty much conceded. Has conceded, which also should be subject to the same waiver argument. Well, except one really is traditionally thought of as part of the merits. It's like damages. You don't get to it if you lose on liability, but you can't postpone your argument on damages. The court's low thought that the government also waived post-judgment interest, and the attorneys apparently agree that that was error. Also, on the Section 580 interest, the trial court held that the statute was ambiguous on whether it applied to anti-dumping duties or not, and if that is true, then Customs interpretation is entitled to deference, because 30 years ago, Customs held a formal rulemaking proceeding, entertained comments, and issued a Federal Register notice explaining that Section 580 interest was an exaction that should be imposed in addition to regular interest. So that has been the agency's interpretation for 30 years. We haven't enforced it. We haven't brought as many enforcement actions. We haven't had to, because usually sureties say, until recently. I don't remember. What was the context of that Federal Register pronouncement? Was it attached to a rule? Was it attached to some legally effective action by Commons? It was a rulemaking proceeding, and the results are published in the Federal Register, but there was a question about what 580 means, and so Customs held a proceeding, invited comments, responded to the comments, and the conclusion, which has stood for 30 years unchallenged, is that it is an exaction that applies in addition to interest because it provides an incentive to sureties not to do what the sureties did here and to wait until the government sues, and then if the government wins, in their view, they've held the money all this time, so the government has lost $2 million of the $6 million just on liabilities that were owed. Did you know what the interest rate would be if we weren't applying 580? The equitable interest rate? Whatever other interest rate would apply. The interest rate would be lower, but it's compound, so the ultimate amount would be a little higher than the 580 interest. Would you like to reserve your time? Please. Mr. Phillips? Good morning, Your Honors. You may please the Court. I guess I want to start with Judge Toronto's question because it seems to me quite plain that the government essentially laid in weeds here at a claim involving multi-millions of dollars on an issue that is, by its nature, inherently complicated, a matter that the government has not asserted in any other form, at least judicially, up to this point, makes no reference to it in the complaint, makes a very passing reference to 580, and then comes back after the judge works very diligently, gets through the liability portion of the case. I have my questions about the liability portions of the case, and we'll get to that, and then the government comes back in and says, not only do we want to brief the 580 issue and everything that goes with it, we also want to have equitable relief, equitable prejudgment interest, even in a circumstance where we recognize that there is a statute that, by its terms, provides for interest. It seems to me the answer in this case is pretty straightforward. The district judge did not abuse this discretion by saying, no, that's too late. That prejudgment interest is embedded in the underlying basis of liability. That's the Seventh Circuit's ruling in this case, and I'm not going to allow you to do that. There's no basis for reversing him on that, and if that's off the table, then the equitable prejudgment ought to be off the table because the statute, first of all, again, they didn't argue it. They didn't raise it, and it's not pro forma. The Supreme Court's decision says clearly that in determining whether you get equitable prejudgment interest, you consider equitable consideration. Is it traditional in cases in which a plaintiff is asking for prejudgment interest and actually does something before the judgment for the plaintiff to offer a kind of a running quantification, which obviously will have to be updated to the point of judgment since you don't know the end point, or is the quantification aspect being postponed? The quantification aspect of it is postponed, but I think the question about the equitable considerations that go into the determination as to whether it is permissible or required even, again, this all should be in the district court's discretion, right? Because if you go to Ostrinac, the Supreme Court's decision on the issue, it talks about factual and legal issues subsumed in the decision to grant discretionary prejudgment interest such as the wrongfulness of the defendant's conduct, the plaintiff's full damages, as well as other matters of equity bearing on all of this. So the inquiry is a wide-ranging one. It's not pro forma. It's not the same kind of mistake that the court, that this court made in eBay where it sort of took all the equitable considerations for injunctive relief and said, no, they reduced down to one. All of that should have been brought forward in the first instance, and none of it was. And as a consequence of that, it seems to me the most that can be imposed on the sureties under these circumstances is the face value of the bonds. If there are no other questions on that, then I'm going to turn to the liability on the face value of the bonds. Can I just ask you one more question about 580? Do you have anything illuminating about why this assertion of 580 has arrived on the scene so recently, even in the history of anti-dumping and countervailing? The only thing I can imagine is that there's a substantially greater desire to find new sources of revenue. And in that context, everybody goes looking in all the cracks and crevices, and somebody found 580. I mean, it's particularly noteworthy. I mean, they adopt a regulation, which seems to me to be largely beside the point in general because it's kind of hard to see how a regulation that really governs judicial proceedings can in any way be binding on the court. And it's been out there for 30 years, and in the 30-year period, they never once decided to assert this provision. So it just seems to me all of these circumstances should lead to the conclusion that the district judge or the trial judge clearly did not abuse discretion. You were about to turn to your cross-appeal, and let me just tell you what I'm focusing on. I'd like you to address it, and I guess it goes to your two principal somewhat related points about the notice deficiency. My general understanding is that in lots of areas of law, including insurance law, failures to give required notice don't automatically invalidate obligations, that there is in fact a prejudice inquiry, in particular when insureds don't give the notice that insurance policies require. I don't know if it's universal, but very widespread is I guess what's called a notice prejudice rule. Why is that not the right background law to bring to bear on interpreting a statutory provision? It simply doesn't address the question of what happens if the notice requirement is not complied with. Well, I guess my answer to that would be that if you're talking about an ordinary contractual arrangement and a contractual notice requirement, that notice is a matter of maybe some importance between the parties, and maybe not. If Congress passes a statute that commands an agency of the federal government to, in all instances, do something, and to do it with a very clear evidence that what it intended was to ensure a certain amount of stability and an ability of that party to be in a better position to protect itself than it would otherwise be, that seems to me to elevate that issue substantially beyond this ordinary insurance situation. And in that context, it doesn't seem to me at all unreasonable for the court to say, no, we're going to put the burden on the other side. We're going to say, look, Congress had a public policy that will be utterly undermined if what we say is that there is no remedy under these circumstances. But notwithstanding, clear command to do this, absolutely explicit, strong policy, public policy behind it, and yet customs can uniformly disregard it and no consequences fall from it. But if you take your argument further, the expectation is that if Congress indeed had those kinds of policy considerations that would drive it to an all-or-nothing remedy, it would specify that remedy. And in the absence of that, we fall back on what Judge Toronto argued was your… Right, but see, I think the reason why it's not ultimately all-or-nothing in all of these circumstances is what I just said. The question is sort of who bears the burden of all things being equal. And it does seem to me that in the vast majority of these cases in which this has arisen, there have been defects in the notice of one sort. It wasn't noticed given at a particular time. But there's a lot of evidence that the party actually did in fact know about what was going on here. And I think it's in that context it's worth at least noting here that there was not one shred of evidence that great Americans ever knew about these bonds. This was a rogue agent operating through another sub-agent who issued all of these bonds. If one can take seriously the word shred, what about the evidence that something was stamped on, was it on the bond or on some document with a code that indicated to those in the know that this was the kind of proceeding in which liquidation was always suspended? True, but we don't know who put that stamp on. It may have been stamped by customs when it received it. The question is who received that and whether you… And you didn't. You did not. No. Because that went where? Because that went to the other charity, the Continuous Bond Charity. They never gave us that notice. But you got some notice. When Davis writes these bonds, surely the charity is advised that a bond… No, that's the whole point. He did this. We never received premiums on a nickel of these bonds. These were all done. He had these pre-stamped, pre-signed approvals that actually exceeded his authority. Putting aside the dollar limit, he had authority from the surety to write these and stick them in a file. Right. And unfortunately, somebody took the premiums and stuck them in their pocket. They never made it to Great America. Isn't the surety responsible for its own practices? That is, isn't that sufficient to hold the surety on notice that these bonds were being issued? See, that to me goes to the core question here, is whether or not you should be able to decide this as a matter of law as opposed to have it on summary judgment as opposed to having some kind of a trial. Because the problem here is we don't know who knew what at all. And when can you say it's reasonable to respond to something when you have a rogue who's operating without any notice coming back and to hold the company to a very substantial liability under those circumstances when the government never bothered to provide any notice? So your argument at this point is you want trial on these issues. Do you also want a trial on the question of apparent authority to exceed the million dollar limit? Oh, absolutely. In fact, if anything, that strikes me that argument is even stronger because there we don't have any evidence. Apparent authority can only be judged from the recipient view, I mean the government's view. We don't have any evidence in this record as to what customs knew about any of this stuff. But apparent authority depends on the actions of the principal, in this case the surety, as between the surety and the agent. Isn't that correct? But one element, yes. There has to be manifestation of the apparent authority, certain actions that manifest that. But there also has to be that provide a reasonable basis for the other side to act in the way that it did. And there's no evidence what customs thought about any of this or that customs ever had any idea about any of what was going on in these circumstances. So it just seems to me that the trial judge, especially when he got to the bonds over authority issue, he just simply slid right past it and said, well, I think there's enough of a responsibility on the surety that they should have done more. Well, that's all well and good, but the reality is that we don't know enough about the facts in this case. We know that there was no actual authority under his assessment of the case. We know that the way you're supposed to change authority in customs is by filing a form that formally changes the authority. So what role apparent authority plays in dealing between the surety and customs under these circumstances strikes me as a fundamentally fact-laden issue that the court ought to vacate and remand. Can I go back to your earlier point about congressional policy and the need to provide notice? Why is that still not tied to the extent to which the other side, your client, absorbed some damages or loss? I mean, even the congressional history that I think both sides cite talk about the reason for the notice is to avoid minimizing loss in the future. And in the absence of your client being able to demonstrate that the failure of a notice resulted in some consequence of damages going forward, why are you entitled to this black or white, all or nothing? Well, again, I don't think it's black or white or all or nothing. I do think what we may have actually known as part of the process is perfectly legitimate consideration in deciding how to equitably allocate all of this. I think the answer is, all I'm saying is that I think in the first instance you ought to assume that there's a problem here. If you want to go further than that, I mean, we certainly have asserted that there's prejudice. Not in a would have, because the problem is five, six, seven, eight years later, I can't prove to you exactly what I would have been able to prove because the employer is gone, the company in China is gone, none of the data are available anymore. What I can tell you is that I would have had an opportunity, would have, to go in and to go to Commerce and to say, wait a second, I don't think the number should be nearly this high. And we lost that opportunity. But have you ever done that before? Have you ever done that? No, but then we never had this much money at stake. Participated in a 1675 administration. No, no. But again. Isn't there some legitimacy to requiring a threshold showing, taking account of how it's hard to look back as to what your company's normal practices in somewhat similar situations were before one says, all right, you actually might have been prejudiced? Well, again, I suppose I'd argue that that's a factual question in some ways. Because what you're trying to say is that history is a prelude to the future. And I don't deny that you could draw one inference from that. But if in fact we never had a proceeding that involved anywhere near the size of the hit that this one is, then it shouldn't come as a shock that under those circumstances we would take a more extraordinary position. I mean, as I understand it, I don't think Great America comes to this court all that often. But in a case like this, they appeal. Could you make the argument that had notice – had the failure of notice carried with it the remedy of automatic liquidation that you would have the benefit of statute of limitations having run and therefore you're prejudiced? Or is that just circular? Well, I mean, there is a certain circularity to it. But look, I think that is a reasonable way to go about it in terms of sort of a modified versus. It's not that we necessarily win or lose. It's that under the circumstances, the most sensible way to respond to the problem is to deal with it in terms of the liquidation and deem the liquidation and therefore the statute of limitations is run in this particular case. So that is a halfway measure that candidly we would be more than satisfied with. Thank you. We'll restore your two minutes of rebuttal and we'll add a couple minutes if you need it. Thank you, Your Honor. Let me ask you, Ms. Davidson, aren't there an awful lot of genuine fact issues that have yet to be resolved? For example, on the question of apparent authority, you all had a form 5297, which put you on notice of the actual authority of Mr. Davis. Isn't that correct? Well, actually, the Customs Service does not have a record of that form and there is only one piece of that form. It's a three or four page form. That's a terrific factual question. They're arguing that there was such a form. Your electronic record apparently shows a form but not that limit. But I would note that that form is for the protection of customs so that customs knows who it's dealing with. It's not to protect the surety so that the surety can later blame customs if customs accepts a bond in excess of an authorized amount. Here, Great American had both constructive and actual notice of the suspension of liquidation. It had constructive notice because the Commerce Department published a notice in the Federal Register which expressly directs customs to suspend liquidation or notes that it suspended by law. You're back on the suspension notice. I want to stay for a moment on the apparent authority issue, which I think is a more difficult issue. The trial court correctly reasoned that obviously there's no contract between the government and Great American. That Great American might have some contractual cause of action against its agent, the company that was selling its bonds, if that company exceeded its authority. But if in fact the government is on express notice that the agent is limited to million dollar bonds and the agent writes bonds in excess, and these were single transaction bonds, and the agent writes bonds in excess of his authority, the government has to know that those bonds are not valid. The only record in the government's possession shows that these bonds were authorized. That's a factual issue because they are disputing that. They are claiming that they filed the proper form 5297, which nobody seems to be able to find. The authority issue only applies to parties who are in privity of contract. So that would be an issue between the company that was selling Great American's bonds and Great American. If that company that was selling the bonds was exceeding its authority or doing something that Great American didn't like, that's what Great American is a very sophisticated company, obviously, since it can hire such learned counsel. It needs to police its own business, but it isn't for the customs service to ensure that funny things don't go on, like the email that's in the appendix where someone from the surety says, well, let's throw this bond at customs and see if they take it, whether it's over the limit or not. The customs service can't police sureties, and the consequence, if sureties are allowed to avoid their obligations on the bonds, the consequence will be that more cash deposits will be required or that customs will start scrutinizing bonds much more carefully, which will slow trade and impose greater burdens on importers and on sureties. So all we are asking is that sureties be held to their word of their bond. Here, the bonds were provided to the customs service. Great American never came to customs until it was sued. It never came to customs and said, oops, we just discovered we've been giving you bonds that exceeded the authority of our agents all these years. It never sought to correct that. It just sat back and waited to see if it was sued. And so if there's any wrongful conduct in this case, it's not the government. But if the third party engages in transactions with an agent that the third party knows the agent, or should have known the agent is not authorized to engage in, can the third party hold the principal responsible for those transactions? Well, that's what we're trying to do. We're the third party beneficiary to their contract, and we're trying to hold them to the contract. Well, that's right. And my question is, if you knew that the agent was not authorized to make the deal that you want to enforce, at the time it was made, under basic contract law, you can't do that, can you? It had authority to sell the bond to the importer. The importer is the one who gave us the bond. So the bond is good from our perspective. If there is some action between the importer, the sales agent, and Great American, that's for them to work out, and they are in a separate litigation. But that doesn't mean that the third party beneficiary is left holding the bag. Also, just going back to the notice point, in addition to the constructive notice of the Commerce Department Federal Register Notice, the bonds themselves at issue here have a Code 4, which is the surety's Code 4, subject to anti-dumping duty order. So the surety knew when it issued the bond that these entries were subject to an anti-dumping duty order, and if they read the statute... I'm sorry, that's the phrase, when they issued the bond. Was the stamp on there at that time? It's a code, the number 4. It's at the top. I just want to make sure. Do we actually know that that code was on there when the surety issued the bond and not added later? It's in the same typeface as everything else that's typed onto the bond, and there's no allegation that Customs added that code to their bond. If their bonds are in the appendix and you can see a Code 4 at the top, that's for anti-dumping. And for putting aside whether it would matter or not, is the agent the one who types up the bond, or is that coming out of some piece of the surety company? My understanding is the agent sells the bonds. I don't know that they type them also. I honestly don't know. The Customs Service receives bonds from the importers. It does not audit the surety's business with its agents to see who does the typing. But that number is on the bond. It was not added by Customs, and there's no allegation that it was. Also, the entry papers that the importers have to provide with the bond have a Code 3, which is a customs code that means subject to anti-dumping duty order. And under the law, those entries are all suspended each year, so there can be an annual review or a determination not to review. So Great American had two types of notice apart from the simple half page that Customs admittedly failed to send to the one surety that had issued a single transaction bond. Now, how they could show harm from not getting notice for a single transaction bond is interesting. You would argue that not being able to invoke the statute of limitations is not the kind of harm that you think it should be. No, because they can't invoke the statute of limitations because this requirement of sending out this notice is directory, not mandatory. The statute contains no consequences. But interestingly, before 1993, failure to send a notice of suspension did result in deemed liquidation, and Congress changed that in 1993 because of that. You make that argument in your brief, and I went back to the statute and tried to compare them, and I'm just missing, I mean, it seems to me, looking at the 1993 statute and the amendments and what the changes were, I'm failing to see how you derive that that change resulted in what you're claiming it resulted in. I think, I don't know if this is in the legislative history, but there was a decision before 1993, I think it was called New Bush, a Court of International Trade decision by Judge Nicholas, which held that failure to send a notice resulted in deemed liquidation, and that caused a lot of shockwaves. So the Customs Mod Act, which was a major overhaul of the Customs Clause, was being enacted in 1993. It was a huge effort, and this was added to change this, to overrule this Court of International Trade decision. It was added so that this is not, if you look at deemed liquidation, Well, if you compare the two statutes, so what are you saying the change was? Because if you compare the two provisions, it seems like the only thing added was or drawback claimant to the language. Because that's the only thing that was added, but I may have to look further to give you a further explanation than what's in our brief, but I think it's definitely the case that before 1993, failure to issue a notice of suspension was considered a, that could lead to deemed liquidation in accordance with this Court of International Trade decision, and since 1993 that has not been the case. And you're saying that they amended somehow the change in language to section C? Of deemed liquidation, 1504, I think. Yeah, it would have been 1504, but we're talking about C, that's the operative provision here. And you're saying the change in language to subsection C was what accomplished what you're saying it accomplished? This is my understanding of the change. I have a parenthetical question for you before you sit down, which is simply displaying my ignorance of how this actually works. What happens, where are the goods, the merchandise, during a period of suspension on the liquidation? Where do the goods go? Are they here in the country? The goods are in a warehouse, and they are released from the warehouse upon the posting of bonds, so that the government is protected once the merchandise is in the chain of commerce. We have the bonds. Once you have the bonds, you release the merchandise. Right. I was worried about those crawfish tails. I wanted to know where they had gone, so I won't eat them if they've been lying around for a while. They are gone, and now, according to Great American, we're just left without any recourse. Thank you. And that's why there would be serious consequences if sureties are not held to pay on their bonds. Thank you very much. Thank you. Okay, Mr. Phillips, in order to keep the time even, we'll give you an additional three minutes in addition to your two. Your Honor, I don't think I'll take the full three minutes, but I do appreciate the offer. First of all, I think it's important to recognize what Ms. Davidson just got done saying to you, which is that, in her view, a violation of Section 1505C has no consequences, period. Congress passed the statute. Sorry, but she doesn't need that more extreme position. She seems to embrace it. Well, of course, because every side always embraces all possible positions that could help them, right? But the narrower position is one that insists on some threshold indication of prejudice and the conclusion that you didn't do that. But, Judge Toronto, I think the problem is, the reason why she takes the extreme position is because there are factual questions embedded in trying to decide what to do short of that, and that's, I think, the reason she's forced to say no consequences, because if you say there are some consequences, we did present some evidence about some opportunities that might have been available to us, and we should be entitled to a trial. The question is whether that was actually evidence or whether that was simply argument that was being made by the lawyers, perhaps even yourself, I don't know. Learn it as you are. But that the trial judge did not think was anything other than just speculation about what could be being done. But he didn't analyze it as a factual matter. All he said was, from my perspective, they have a much higher burden. Our burden is to demonstrate what we would have proved. My point is, in just the same way as you have to deal with spoliation issues and what would you have done under those circumstances, it is virtually impossible to go back and prove what you would have done. The best you can do is try to offer up what you could have done and ways to protect, and giving us the benefit of the doubt makes sense because that was Congress's intent in enacting this statute, which was to protect the sureties, particularly small importers and their sureties, from the kinds of burdens that come in when you get hit with a $6 million at the back end of the circumstances. You think we have to attribute some purpose to that notice requirement, that's your argument? I would certainly hope not. If Congress passed it, you would think so. And particularly, Judge Post, I had the same problem you did with respect to 1993. It seems to me the world didn't come to an end. This goes back now to the statute of limitations. If it's true that under these circumstances they would have deemed the liquidation to take place and the statute of limitations to run, it's hard to imagine that suddenly the world comes to an end if we have exactly that consequence in a situation where the government has utterly failed to take any kind of action to avoid the liability problem that it faces in this case. And nothing, nothing in the pre-1993 compared to the post-1993 statute remotely says that there's been this fundamental shift in how the Congress wanted that to be treated. Under those circumstances, it seems to me that's a reasonable solution to this problem. And it's not one that goes, candidly, to the all or nothing. What it says is that in certain circumstances it will be deemed that way, and that runs the statute of limitations. And that's a perfectly sensible solution to this case under these circumstances. If there are no other questions, I'll see you back here. Thank you. We thank both parties for cases submitted.